KATHARINE BARTOW and Others, Appellants, *v.* JONATHAN SIDWAY and Others, Respondents.

72  435
41ap617

*Presumption of the continuance of an agency — a son, as the business agent of his mother — conveyance by the mother to the son's wife — agreement for the support of the mother during life — exclusion of evidence of an account, under section 531 of the Code of Civil Procedure.*

An individual who is shown to have acted as agent for another during a long series of years in business transactions may be presumed, in certain instances, as to transactions with others, to continue his agency, but such presumption will not continue as to transactions between the principal and the agent or his wife.

In an action brought by the daughter and executrix of a deceased mother to set aside conveyances made by the mother in her lifetime to her daughter-in-law, her son's wife, of property for which the daughter-in-law had theretofore received sheriff's deeds upon execution sales on judgments against the mother, it was claimed by the plaintiff that the son was his mother's trusted agent, and that as such agent he bid in the several parcels of land at the sheriff's sales in the name of his wife, who took title thereto under such bids, and that under the circumstances the wife must be deemed to hold the title in trust for the mother. It appeared, however, that an agreement had been made between the mother and her son and daughter-in-law, by which the latter was to support and maintain the mother and another of her sons during their lives, and that this agreement had been performed by the daughter-in-law.

*Held,* that in the making of this agreement the son was not acting as agent for his mother;

That the agreement constituted a good consideration for the conveyances by the mother to the son's wife;

That the contract was a fair and just one;

That there was no deception or undue influence practiced upon the mother to induce her to make the conveyances; and that she was capable of understanding the nature and import of the transaction.

To entitle a party to avail himself, on the trial of an action, of the right to demand the exclusion of evidence of an account set up by the other party in his pleading, on the ground that a bill of particulars has not been furnished, he must not only have made a demand for such bill of particulars, but an order must have been previously obtained, as prescribed by section 531 of the Code of Civil Procedure, on the refusal of the demand for the items of the account.

APPEAL by the plaintiffs, Katharine Bartow and others, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of Erie county on the 25th day of January, 1893, upon a decision rendered after a trial by the court at the Erie equity term, dismissing the complaint upon the merits.

*Leroy Parker*, for the appellants.

*Adelbert Moot* and *James C. Beecher*, for the respondents.

HAIGHT, J.:

This action was brought to set aside certain transfers of property made by one Aurelia Bemis to Katharine R. Bemis, her daughter-in-law, and for an accounting.

The plaintiff Katharine Bartow is a daughter of Aurelia Bemis and the executrix of her last will and testament, which was executed in the year 1847, discovered in 1890, and shortly thereafter admitted to probate. Aurelia Bemis had two sons, named Asaph and Elijah St. John Bemis. Katharine R. Bemis was the wife of Asaph Bemis, and a sister of the defendants Jonathan and Franklin Sidway, who are her only heirs at law. Aurelia Bemis, the mother, Asaph Bemis, the son, and Katharine R. Bemis, his wife, died before the commencement of this action. Formerly Aurelia Bemis was the owner of a tract of land in the city of Buffalo, being a part of outer lot 93, commencing 173¾ feet from the intersection of Michigan and Seneca streets on the south side of Seneca street, and being eighty-two and one-half feet in width on Seneca street, extending southerly to the Little Buffalo creek, a distance of nearly 1,000 feet. She also, in 1852, purchased a house and lot on Franklin street, known as No. 147. At the time of the purchase the Franklin street property was incumbered by a mortgage, executed by David Burt to Benjamin Fitch, July 15, 1841, for $6,200. This mortgage was assigned by Fitch to Seth Grosvenor, July 15, 1841, and by Grosvenor and Seth G. Babcock to Henry W. Burt, June 3, 1859, at which time there remained unpaid thereon the sum of $3,600. It was again assigned by Burt to Katharine Bartow, the plaintiff, July 21, 1859, reciting the balance unpaid as $3,604.42.

July 9, 1859, the International Bank of Buffalo recovered a judgment for the sum of $1,007.36, against Asaph Bemis and Aurelia Bemis, in the Superior Court of Buffalo, upon a note given by Asaph Bemis to Aurelia Bemis, and by her transferred to that bank. August 16, 1860, the sheriff sold the Franklin street property upon an execution issued upon that judgment to Merwin S. Hawley, and issued a certificate of sale to him. March 23, 1864, Hawley assigned the certificate of sale to Katharine R. Bemis, and July 10, 1879, G.

A. Scroggs, the sheriff, executed and delivered to her a sheriff's deed of such property under the foregoing sale.

September 7, 1878, George W. Tifft recovered a judgment against Aurelia Bemis, in the Erie County Court, for $912.88, on which judgment the sheriff sold, July 27, 1879, the Franklin street property, and also the property lying between Carrol and Exchange streets, and issued a certificate of such sale to George W. Tifft, who thereafter assigned the same to Katharine R. Bemis, and February 17, 1881, Joseph H. Haberstro, as sheriff, executed and delivered to Katharine R. Bemis a deed of such premises under the foregoing sale. September 22, 1878, Aurelia Bemis, by a warranty deed, conveyed to Katharine R. Bemis the entire land owned by her, lying between Carrol and Exchange streets, in consideration of the sum of $15,000, and on the same date, by a warranty deed, she conveyed to Katharine the south 155 feet of the land owned by her lying between Exchange street and the Main and Hamburg Canal in consideration of the sum of $10,000, which lots Katharine R. Bemis subsequently sold; the former to Francis H. Root for the sum of $15,000, and the latter to the New York Central Railroad Company for the sum of $16,500. December 27, 1880, Aurelia Bemis, by a warranty deed, conveyed to Katharine R. Bemis the Franklin street property.

December 17, 1852, Aurelia Bemis executed a mortgage in consideration of $2,500 to the Buffalo Savings Bank upon her premises lying between Seneca and Carrol streets. June 29, 1874, this mortgage was discharged of record and another mortgage was executed by her to the same bank upon the same premises for $6,500. November 14, 1876, a judgment was entered in favor of the bank against Aurelia Bemis for the sum of $7,050.83 upon the said mortgage, and December 7, 1876, the premises were sold thereunder and bid in by Katharine R. Bemis, and on that day a sheriff's deed was executed and delivered to her.

Inasmuch as this controversy is confined to the Franklin street lot and the Seneca street lot, we do not deem it necessary to pursue the record title further. There were other deeds and mortgages executed, but they pertained to other parcels and do not materially affect any question raised for our consideration.

It is claimed on the part of the plaintiff that Asaph Bemis was

the agent and trusted son of Aurelia Bemis, and that as such agent he bid in the several parcels upon the sheriff's sale in the name of his wife, who took title thereto under such bid, and that under the circumstances she must be deemed to hold the title of such parcels in trust for Aurelia Bemis. There would be much force in this contention were it not for another fact which appears in the case.

The trial court has found " that in consideration of the conveyance of the real estate to said Katharine R. Bemis by deeds from the sheriff and the said Aurelia Bemis    *    *    *    and in addition to money paid, it was agreed by said Katharine R. Bemis that she, said Katharine R. Bemis, would support and maintain for and during the period of their natural lives the said Aurelia Bemis and her said son, Elijah St. John Bemis ; that in pursuance of such agreement the said Katharine R. Bemis did, from and after the making of said agreement, properly support and maintain said Aurelia Bemis until the death of said Aurelia, and did properly support and maintain said Elijah St. John Bemis until the date of the death of said Katharine R. Bemis, which occurred on the 15th of March, 1890 ; that said Katharine R. Bemis, before her decease, provided for the support of said Elijah St. John Bemis during the period of his natural life by her said brothers and heirs, Jonathan and Franklin Sidway ; that said Jonathan and Franklin Sidway, soon after the decease of said Katharine R. Bemis, and before the commencement of this action, executed and delivered proper instruments charging upon said property inherited by them from said Katharine R. Bemis the support and maintenance of said Elijah St. John Bemis for and during the period of his natural life, which instrument so executed was and is effectual for the purpose aforesaid. And the said Sidways have since the death of said Katharine R. Bemis supported and maintained said Elijah St. John Bemis according to the agreement between said Aurelia and Katharine R. Bemis. That the agreement between said Katharine R. Bemis and Aurelia Bemis for the support and maintenance of said Aurelia and Elijah St. John Bemis was a fair one, and the obligation incurred by said Katharine R. Bemis was a just and fair equivalent for any equity of redemption or other claim which Aurelia Bemis then had or might assert with reference to any of the property of which said Aurelia Bemis had been seized."

As to this agreement it is claimed on behalf of the respondents that Asaph was not acting as agent for his mother. We are inclined to concur in this view, for in our examination of the case we fail to find any evidence tending to show that he acted as such agent. He undoubtedly acted for his mother as to many of the transactions appearing upon the record. She undoubtedly trusted him and relied upon him to a large extent, but when it came to the making of the contract between his mother and his wife, in which he and his wife agreed to support and maintain his mother during her life and her son Elijah St. John during his life, there is no evidence that he acted for her.

An individual who is shown to have acted as agent for another during a long series of years in business transactions may be presumed in certain instances to continue his agency as to transactions with others, but such presumption will not continue as to transactions between the principal and the agent or his wife.

The question, therefore, is as to whether there was such a contract. The agreement does not appear to have been in writing. The only direct evidence we have of the agreement is the admission of Aurelia Bemis, made in her lifetime to one Jane Fickey, who testified that on one occasion Elijah St. John Bemis was lamenting his position in life, and that his mother replied to him, saying: " You need not trouble. I have made provisions for you." She further testified that afterwards Mrs. Aurelia Bemis said to her that " she had turned over her property to her son Asaph and his wife for the keeping of herself and her son Elijah." When this agreement was made does not appear, neither do its details. This admission was made in the year 1881. The title of the Franklin street property had been in Katharine since the year 1879, and the title of the Seneca street property since December 7, 1876. A warranty deed was executed and delivered by Aurelia Bemis to Katharine of the Franklin street property in December, 1880. If Aurelia turned over her property to her son Asaph and his wife for her keeping and that of her son Elijah, the agreement must have been made as early as December, 1876. As to the details of the agreement we have only the admission of Aurelia and the inference that may be drawn from the manner in which the agreement was executed by Katharine. It is an undisputed fact that during the life-

time of Asaph that Aurelia and Elijah were properly looked after, cared for and their wants supplied by him, and that after his death this duty was properly performed by Katharine, and that just before her death, during her last sickness, she called to her bedside her attorney in company with her brothers, the defendants, and gave directions in reference to papers she wished drawn and executed, and that, in accordance with such directions, the defendants executed papers in which they charged their property with the support of Elijah St. John Bemis during his lifetime, and after his death they undertook to convey the Franklin street property to Katharine Bartow, the plaintiff in this action. This is the manner in which Katharine Bemis executed her part of the contract.

Was the contract a fair and just one? As we have shown, Katharine received nothing out of the Franklin street property. It was reserved for the support of Mrs. Aurelia Bemis and her son during their lives, and it then goes to the plaintiff. It was used by them as a dwelling and produced no income. Katharine had to support them and pay the taxes out of the Seneca street property. We are left in some doubt as to the value of this property in 1876. It appears that the Buffalo Savings Bank took a mortgage thereon for $6,500, and that it refused to take a mortgage thereon for any greater sum. Dr. Orson St. John offered $10,000 therefor, but it was not accepted. The plaintiff claims that it was worth $20,000. On behalf of the plaintiff it is claimed that Asaph and Katharine Bemis had been more than paid for any money that they had expended in behalf of Aurelia or Elijah. Whilst on behalf of the defendants, the accounts of Asaph were put in evidence, showing in detail the amount of payments made, which, after deducting the credits received upon the sale of the lots to Root and to the New York Central Railroad Company, with the rents collected, left a balance his due of $14,008.41. The trial court has found that the agreement was a just and fair one, and that the obligation incurred in the support of Aurelia and her son Elijah was a fair equivalent for any equity of redemption that existed, and this finding, we think, is supported by the evidence.

Was there deception or undue influence practiced upon Aurelia Bemis to induce her to make the conveyance in question, and was she capable of understanding the nature and import of the trans-

action ? These questions have been considered and passed upon by the trial court. There is evidence that sustains the findings. It was undoubtedly true that during the last two or three years of her life she was somewhat feeble in body and mind. She died on December 29, 1883, at the advanced age of ninety years and eleven months. As we have seen, one of the conveyances brought in question was made in 1876 and the other in 1880, and some of the evidence tends to show that during these years she was quite vigorous, both in body and mind, for one of her years, and that she understood fully every business transaction entered into by her. The trial court had the advantage of seeing and hearing the witnesses deliver their testimony, and whilst the witnesses differ, the testimony taken together is of such a character that we cannot well say that the findings of the trial court are against the weight of evidence.

Upon the trial Dr. Bartow, a son of the plaintiff, was sworn as a witness, and was asked to state the amount of the income that Aurelia Bemis had during the period that he was living in her home. The witness proceeded to state what she had told him. This was objected to by defendant's counsel as involving a personal transaction and was sustained by the court. The witness was not a party and we do not see how the ruling can be sustained upon the ground stated. Whether her declarations were evidence as against the defendants we shall not now consider, for the evidence is of but slight materiality, and her income was disclosed by other undisputed evidence.

It is claimed that the court erred in admitting in evidence the vouchers and accounts of Asaph Bemis; that there was no proof of the handwriting of any of the signatures upon the vouchers, and that the books were not shown to have been correctly kept. But no objection to these accounts appears to have been made upon these grounds. When offered in evidence they were stated to be the same items set up to defendant's answer, both as a defense and counter-claim. The plaintiff's counsel objected to their introduction upon the ground that he had demanded a bill of particulars of the items set forth in the answer and the same had not been furnished. This objection was overruled and we think properly. If the plaintiff had desired to avail himself of the exclusion of this evidence under the

provisions of section 531 of the Code he should have procured an order. (*Gebhard* v. *Parker*, 120 N. Y. 33.)

We have examined the other exceptions taken, but find none that require a new trial.

The judgment should be affirmed, with costs.

DWIGHT, P. J., and LEWIS, J., concurred.

Judgment appealed from affirmed, with costs.